Eric H. Horn Esq. (NJ No. 003822005)
David Salhanick, Esq. (NJ No. 041022011)
(admitted *pro hac vice*)
A.Y. STRAUSS LLC
101 Eisenhower Parkway, Suite 412
Roseland, New Jersey 07068
Tel: (973) 287-5006
Email: ehorn@aystrauss.com
*Attorneys for Defendants Zariz Transport, Inc.*
*and Yaakov Guzegul*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOREMUS LAND 672, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>ZARIZ TRANSPORT, INC. and<br>YAAKOV GUZEGUL<br><br>*Defendants* | DOCKET NO.: 2:23-cv-02850<br><br>**Oral Argument Requested Pursuant to<br>L. Civ. R. 78.1(b)** |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS COMPLAINT

**A.Y. STRAUSS, LLC**
101 Eisenhower Parkway, Suite 412
Roseland, NJ 07068
(973) 425-5548

Attorneys for Defendants

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS ............................................................................................................................... 2

A.     The Prior Action .................................................................................................... 2

B.     The Eminent Domain Action ................................................................................. 5

C.     This Action............................................................................................................. 8

POINT I:       AS PLAINTIFF DOES NOT OWN THE PROPERTY,
               ITS COMPLAINT MUST BE DISMISSED…………………………………... 9

               A.     Legal Standard…………………………………………………………....9

                      i.    Failure to State a Claim………………………………………….....9

                      ii.   Lack of Jurisdiction - Standing & Mootness………………………..10

               B.     Plaintiff Had No Legal Interest in the Property, and
                      Cannot Assert Claims Against Defendants……………………………12

POINT II:      PLAINTIFF FAILS TO STATE A CLAIM UNDER THE SPILL ACT……...  16

POINT III:     PLAINTIFF'S CLAIMS ALSO FAIL FOR ADDITIONAL REASONS……… 19

CONCLUSION… ...............................................................................................................21

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………..*passim*

*Associates Commercial Corp. v. Wallia*, 211 N.J. Super. 231 (App. Div. 1986)……………… 14

*Associated East Mortg. Co. v. Young,* 163 N.J. Super. 315 (Ch. Div. 1978)……………………14

*Ballentine v. United* States, 486 F.3d 806 (3d Cir. 2007)………………………………………… 10

*Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, L.L.C.*,
655 F. Supp. 2d 473 (D.N.J. 2009)……………………………………………………………16

*Cataldo Constr. Co. v. County of Essex,* 110 N.J. Super. 414 (App. Div. 1970)………………..13

*Daimler-Chrysler Corp. v. Cuno,* 547 U.S. 332 (2006)…………………………………………11

*Dalton v. Shanna Lynn Corp.,* 2012 WL 1345073 (App. Div. 2012)………………………….... 16

*Davis v. FEC,* 554 U.S. 724 (2008)…………………………………………………………...10

*Doe v. Hesketh,* 828 F.3d 159 (3d Cir. 2016)………………………………………………..n.1

*Edwards v. Leopoldi,* 20 N.J. Super. 43 (App. Div. 1952)……………………………………... 13

*Evancho v. Fisher,* 423 F.3d 347 (3d Cir. 2005)………………………………………………...9

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)………………………………………... 10

*Gould Electronics Inc. v. US*, 220 F. 3d 169 (3d Cir. 2000)……………………………………11

*Horn v. Harmony Sand & Gravel Inc.,* 442 N.J. Super. 333 (App. Div 2015)…………………..12

*In re Continental Airlines*, 91 F. 3d 533 (3d Cir. 1996)…………………………………………11

*In re Schering Plough Corp*., 678 F.3d 235 (3d Cir. 2012)…………………………………….. 11

*Liner v. Jafco, Inc.,* 375 U.S. 301 (1964)……………………………………………………11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)………………………………………...10

*Malleus v. George,* 641 F.3d 560 (3d Cir. 2011)…………………………………………... 9, 10

*Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010)……………………………………………10

*Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884 (3d Cir. 1977)…………………………11

*Noye v. Hoffmann-La Roche Inc.*, 238 N.J. Super. 430 (App. Div. 1990)………………………14

*Rego Indus., Inc. v. American Modern Metals Corp.,* 91 N.J. Super. 447 (App. Div. 1966)…... 15

*Rolnick v. Rolnick,* 262 N.J. Super. 343 (App. Div. 1993)……………………………………....14

*Rosetti v. Shalala*, 12 F. 3d 1216 (3d Cir. 1993)……………………………………………...11

*Ross Systems v. Linden Dari-Delite, Inc.*, 35 N.J. 329 (N.J. 1961)……………………………...13

*Thiokol Chem. Corp. v. Morris County Bd. of Taxation,* 41 N.J. 405 (N.J. 1964)…………….. 12

*Wade v. Kessler Institute*, 172 N.J. 327 (N.J. 2002)…………………………………………… 14

*Weinberg v. Dinger,* 106 N.J. 469 (1987)……………………………………………….... 15

*Rego Indus., Inc. v. American Modern Metals Corp.,* 91 N.J. Super. 447 (App. Div. 1966)…... 15

**STATUTES AND RULES**

N.J.S.A. § 20:3-19………………………………………………………………………… 12

N.J.S.A. § 58:10–23.11………………………………………………………………..*passim*

N.J.S.A. § 20:3-2(j)………………………………………………………………..n.1

N.J.S.A. § 13:1E-99.28a……………………………………………………………*passim*

N.J.S.A. § 2A:18-72……………………………………………………………………… 19

**TREATISES**

5
3 C.J.S. Licenses § 153……………………………………………………………………12

Restatement (First) of Property § 512 (1944) cmt.to (b)………………………………...12

Defendants Zariz Transport Corp., Inc. ("Zariz") and Yaakov Gezelgul ("Guzelgul," misnamed in the complaint as "Guzegul," and together with Zariz, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint for failure to state a claim upon which relief can be granted**,** pursuant to Fed. R. Civ. P. 12(b)(6), and based on plaintiff Doremus Land 672, LLC's ("Plaintiff") lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1).   For the reasons set forth below and in the accompanying Declarations of David Salhanick ("Salhanick Decl.") and Yaakov Guzelgul ("Guzelgul Decl."), the motion to dismiss should be granted.

## PRELIMINARY STATEMENT

Plaintiff, asserting that it is the owner of the property at 672-694 Doremus Avenue, Newark, New Jersey (the "Property"), has sued its purported former licensee of the Property, Zariz, and Zariz's president and chief operating officer, Guzelgul.  Plaintiff alleges, *inter alia*, that Zariz failed to pay it license fees due under a License Agreement that Plaintiff and Zariz executed in February 2022; that Defendants brought "dangerous" recycled asphalt road millings to the Property and improperly left them there; and that Zariz failed to vacate the Property after the license terminated.  Based on these and similar allegations, Plaintiff asserts a variety of claims for monetary damages and injunctive relief against Defendants.

Plaintiff's claims have no merit.  In 2021, the Passaic Valley Sewage Commission ("PVSC") seized the Property by eminent domain and filed a Declaration of Taking.  Based on those facts, the Superior Court of New Jersey issued a final judgment determining that Plaintiff does not own the Property and has not had a legal interest in the Property since 2021.

Accordingly, Plaintiff's claims must fail.  The purported License Agreement that is the basis of Plaintiff's claims is void, because in February 2022, Plaintiff could ***not*** license the

Property to Zariz.  Plaintiff lacks standing to pursue any claims against Defendants related to the Property, because the Property is, and at all relevant times was, owned by PVSC, not Plaintiff.

Plaintiff's additional claim against Defendants for contribution under the New Jersey Spill Act also fails.  That claim is premature, as Plaintiff has not yet paid to remediate the contamination allegedly caused by Defendants, and it also fails because New Jersey law expressly permitted Defendants to use recycled asphalt millings at the Property.

Additionally, even assuming, *arguendo*, that the License Agreement was somehow valid, Plaintiff's claims to evict Zariz from the Property are moot, as Zariz vacated the Property in December 2022, and Zariz's use of recycled asphalt millings at the Property did not breach the License Agreement, because the millings are not "Hazardous Materials."

For these reasons, and as further set forth in this memorandum, the Complaint should be dismissed for Plaintiff's failure to state a claim and for Plaintiff's lack of standing.

## FACTS

### A.    The Prior Action

On or about January 10, 2023, Plaintiff commenced a civil action in the Superior Court of New Jersey, County of Essex, General Equity Part, captioned *Doremus Land 672, LLC v. Zariz Transport, Inc. and Yaakov Guzelgul*, Docket No. ESX-C-7-23 (the "Prior Action").  In its verified complaint in the Prior Action (the "Prior Action Complaint," Salhanick Decl., Ex. 1), Plaintiff alleged:

- that on February 20, 2022, Plaintiff licensed a commercial parking lot ("Parking Area") at the Property to Zariz;

- that Zariz breached the License Agreement by (1) failing to pay monthly license fees, (2) bringing in recycled asphalt road millings to the Property (for the

purpose of repairing gaping potholes at the Parking Area), which asphalt millings allegedly constituted "Hazardous Materials" under New Jersey law and the License Agreement, (3) performing oil changes at the Property, and (4) failing to timely vacate the Property upon termination of the License Agreement.

(*See generally*, Salhanick Decl., Ex. 1; Guzelgul Decl, Ex. A [copy of License Agreement]).

Based on these allegations, Plaintiff asserted claims against Zariz and/or its president and chief operating officer, Guzelgul, for breach of contract, unjust enrichment, negligence, declaratory judgments, and provisional injunctive relief.

Concurrently with its commencement of the Prior Action, Plaintiff moved by Order to Show Cause for a preliminary injunction and temporary restraining order ("TRO"). (Salhanick Decl., ¶4 and Ex. 2)

The requested preliminary injunction sought an order enjoining and restraining Defendants from: (i) placing any additional road millings or Hazardous Materials at the Property, (ii) compelling Defendants to remediate the Parking Area by removing the asphalt millings and barring Defendants from preforming oil changes there; (iii) compelling Zariz to vacate the Licensed Premises; and (iv) compelling Defendants to indemnify Plaintiff for any damages. (*Id*.). The requested TRO sought an immediate order granting items (i) and (ii) above. (*Id*.)

On January 20, 2023, the Superior Court (Hon. Jodi Lee Alper, J.S.C.) heard argument of Plaintiff's TRO. At the argument, Defendants presented evidence that Plaintiff had itself brought asphalt millings to the Property (*see* Guzelgul Decl., ¶7 and Ex. B), and Defendants argued that Plaintiff had failed to demonstrate that the millings allegedly brought to the Property by Zariz were harmful.   (Salhanick Decl., ¶6).

3

Following the argument, Judge Alper issued an order temporarily restraining both sides – Plaintiff and Defendants – from bringing additional millings or Hazardous Materials to the Property; directing Defendants to provide Plaintiff with records of any millings they had purchased for, brought to, or deposited on, the Property; and denying Plaintiff all other relief. (Salhanick Decl., ¶7 and Ex. 3).  The hearing on Plaintiff's motion for a preliminary injunction was scheduled for February 22, 2023.  (*Id*.)

In January 2023, Defendants learned for the first time that Plaintiff did not own the Property, and Plaintiff had no legal interest in the Property since at least November, 2021, when PVSC acquired title to the Property by eminent domain.  (Guzelgul Decl., ¶17; Salhanick Decl., ¶8).  Defendants filed opposition to the motion for preliminary injunction, arguing, among other things, that absent a legal interest in the Property, Plaintiff could not possibly demonstrate a danger of irreparable harm to it.  (Salhanick Decl., ¶8).

On February 22, 2023, Judger Alper heard argument on the motion for preliminary injunction.  During the argument, Defendants advised the Court that Plaintiff's request for an order directing that Zariz "vacate" the Property was moot, because Zariz had already vacated the Property.  Judge Alper asked if Defendants would consent to a preliminary order restraining Defendants from placing additional millings or Hazardous Material on the Property. Defendants agreed to consent thereto, provided the order issued was without prejudice to Defendants' argument that Plaintiff lacked an interest in the Property.  (Salhanick Decl., ¶9).

Following the hearing, Judge Alper issued an order preliminarily restraining Defendants, on their consent, from placing additional millings or Hazardous Material on the Property, without prejudice to Defendants' position as to Plaintiff's lack of ownership, and otherwise denying Plaintiff's application in its entirety.  (Salhanick Decl., ¶10 and Ex. 4).

Following its successive losses before the Superior Court on its motions for a TRO and preliminary injunction, on February 24, 2023, Plaintiff filed a notice of voluntary discontinuance of the Prior Action.  (Salhanick Decl., Ex. 5).

**B.     The Eminent Domain Action**

On December 7, 2019, PVSC commenced an action again Plaintiff and others in Essex County Superior Court, Civil Part, captioned *Passaic Valley Sewer Age Comm. v. Doremus Land 672, LLC, et al.* Docket No. ESX-L-008363-20 (the "Eminent Domain Action"), seeking judicial recognition of its seizure of the Property by eminent domain.  (Salhanick Decl., ¶12 and Ex. 6),

After commencing the Eminent Domain Action, PVSC filed an Amended Declaration of Taking of the Property. (Salhanick Decl., Ex. 7).

PVSC promptly moved By Order to Show Cause for a judgment (1) adjudging that PVSC had duly exercised its power of Eminent Domain, (2) appointing commissioners to determine fair compensation for the Property, and (3) granting PVSC immediate possession of the Property. Plaintiff opposed the motion. (Salhanick Decl., ¶14),

By Order for Judgment and Appointing Commissioners dated October 5, 2021, Superior Court Judge Thomas M. Moore:

    a.     granted PVSC's motion;

    b.     issued a judgment (the "Judgment") ordering and adjudging "that Plaintiff is duly vested with and has duly exercised its powers of Eminent Domain to acquire the subject property of the Defendants as described in the Complaint and Declaration of Taking," and appointing commissioners to determine Plaintiff's compensation;

      c.      by accompanying Opinion and Order, held that PVSC had lawfully

               acquired the Property by eminent domain.

(*See* Salhanick Decl., Ex. 8).

     In his Opinion and Order, Judge Moore held that:

       1.      PVSA's use on eminent domain was lawful;

       2.      PSVC's commencement of the action and filing of a Declaration

             of Taking gave PVSC title to the Property; and

       3.      PVSC was entitled, upon satisfaction of certain conditions, to

             immediate possession of the Property.

(*Id.* at 9-10).

     Judge Moore noted with respect to PVSC's title to the Property:

> The right to take taking possession in the condemnation process arises from Eminent Domain Act of 1971. The provision concerning the right to possession and declarations of taking provides that "at any time contemporaneous with or after the institution of an action and service of process, the condemnor may file in the action, when empowered to do so by law, and if so filed, shall also file in the recording office a declaration of taking." N.J.S.A. 20:3-17.

> Once recordation and service of the declaration of taking has occurred, the right to the immediate and exclusive possession and title to the property vests in the condemnor. N.J.S.A. 20:3-19; Monmouth County v. Wissell, 68 N.J. 35, 38 (1975). The condemnor is not required to file a declaration of taking along with the verified complaint, N.J.S.A. 20:3-17, but must do so for the right to immediate and exclusive possession to vest. Township of Piscataway v. South Washington Ave., LLC, 400 N.J. Super. 358, 367 (App. Div. 2008). "The terms of the Act are clear. Pursuant to N.J.S.A. 20:3- 17, a taking of the property does not occur until the municipality files and records a declaration of taking." Berardi v. Twp. of Pemberton, 2013 WL 3820721, at *2 (App. Div. July 25, 2013) (citing Twp. of Wayne v. Ricmin, Inc., 124 N.J. Super. 509, 517 (App. Div.), certif. denied, 63 N.J. 538 (1973)).

(*Id.* at 9).

     On November 17, 2021, PVSC recorded a Deed to the Property, together with the

Declaration of Title, in the Office of the Essex County Clerk. (Salhanick Decl., Ex. ¶18 and Ex. 9).  Consequently, pursuant to *N.J.S.A.* 20:3-19, "title to the property described in the declaration of taking [] vest[ed] in [PVSC], free and discharged of all right, title, interest and liens of all condemnees without the necessity of further process…"

Plaintiff subsequently moved for reconsideration of the Judgment.  (*See* Salhanick Decl., Ex. ¶19).  While that motion was pending, at Plaintiff's request and with PVSC's consent, Judge Moore entered an order staying "the further implementation" of the Judgment. (Salhanick Decl., ¶19 and Ex. 10).  However, Judge Moore did not stay or rescind his determination that PVSC had acquired title to the Property.  (*Id*.)

On March 23, 2023, Plaintiff withdrew its motion for reconsideration of the Judgment. Salhanick Decl., ¶20).  On April 27, 2023, PVSC and Plaintiff executed a settlement agreement, under which Plaintiff agreed to surrender possession of the Property to PVSC.  (Salhanick Decl., ¶20 and Ex. 11).

The settlement agreement stated, among other things:

> "2.    Doremus shall deliver exclusive possession of the Subject Property to PVSC no later than 548 days from the date of this Agreement."

> "3.    Doremus agrees that this agreement shall act as a release….from any and all relocation claims Occupants may have against PVSC under any law or regulation."

(*Id*. at 3).

On April 26, 2023, Plaintiff filed a motion to withdraw compensation funds deposited by PVSC with the Superior Court.  (Salhanick Decl., ¶22).  PVSC opposed the motion.  (*Id*.).  In its reply brief submitted in further support of the motion, Plaintiff clearly acknowledged PVSC's title to the Property.  *See* Salhanick Decl., Ex. 12, at 2 ("the April 2023 settlement agreement resolved

[Plaintiff's] objection to the PVSC's authority to take the subject property"); 3 (the settlement agreement "recognize[s] that [Plaintiff] waived its right to object to the taking"); 5 ("The mere fact that the parties agreed to let [Plaintiff] maintain possession of the property for a set timeline does not override the constitutional principle that a condemnee's right to payment arises at the time of taking….PVSC cannot take title to the property and simultaneously restrict [Plaintiff's] entitlement to the estimate compensation on deposit").

On May 16, 2023, Judge Moore issued an order granting Plaintiff the right to withdraw the compensation posted by PVSC.  (Salhanick Decl., Ex. 13).

The Deed and Declaration of Taking recorded by PVSC, and the Judgment issued by Judge Moore, remain of record, and have not been vacated or rescinded. (Salhanick Decl., ¶24).

### C.   This Action

On May 1, 2023, Plaintiff filed the instant action against Defendants in the Superior Court of New Jersey, County of Essex.  Plaintiff's Complaint in this action (Salhanick Decl., Ex. 14) is virtually identical to the Prior Action Complaint (Salhanick Decl., Ex. 1).  The major difference between the Complaint herein and the Prior Action Complaint is that the Complaint appears finally to acknowledge that Zariz has vacated the Premises, although the millings remain at the Premises. *Compare* Complaint, ¶35 ("Although Zariz removed certain personal property from the Licensed Premises, it failed to remove the road millings that it spread throughout the Licensed Premises") *with* Prior Action Complaint, ¶36 ("To date, Zariz has failed to make payment or vacate the Licensed Premises.").

In an apparent attempt to avoid having the case assigned to Judge Alper, who had twice denied Plaintiff's motions for preliminary relief, Plaintiff filed this action in the Law Division of the Superior Court, rather than in the Chancery Division where the Prior Action had been filed.

After commencing the action, Plaintiff did not immediately serve the Summons and Complaint.  On May 25, 2023, Defendants filed a Notice of Removal, removing this action from the Superior Court of New Jersey, County of Essex, to the United States District Court for the District of New Jersey.  (ECF Dkt. 1).  Plaintiff did not challenge removal of this action.

On July 21, 2023, Defendants executed an Acknowledgment of Service of the Summons and Complaint.  (ECF Dkt. 13).  On July 24, 2023, Magistrate Judge Espinosa "So Ordered" the parties' stipulation extending Plaintiff's time to respond to the Complaint to September 19, 2023. (ECF Dkt. 15).

Defendants now move to dismiss the Complaint for Plaintiff's failure to state a claim upon which relief can be granted and based on Plaintiff's lack of standing.

## ARGUMENT

### Point I

### AS PLAINTIFF DOES NOT OWN THE PROPERTY, ITS COMPLAINT MUST BE DISMISSED

**A.** **Legal Standard**

*i.* ***Failure to State a Claim***

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than "the-defendant-unlawfully-harmed-me accusation[s]," are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678;

*Malleus*, 641 F.3d at 563. Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a `plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court may evaluate the complaint, the exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

### ii.     *Lack of Jurisdiction - Standing & Mootness*

Article III of the United States Constitution limits the scope of federal judicial power to the adjudication of "cases" and "controversies." U.S. Const. art. III, § 2. A fundamental safeguard of that limitation is the doctrine of standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). Only a party with standing can invoke the jurisdiction of the federal courts.

"A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United* States, 486 F.3d 806, 810 (3d Cir. 2007).

"The standing inquiry …focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. FEC,* 554 U.S. 724, 734 (2008). To establish that stake, a plaintiff must show three elements: injury-in-fact, causation, and redressability. In the seminal standing opinion *Lujan v. Defenders of Wildlife*, the Supreme Court described those elements as follows:

> First, the plaintiff must have suffered an "injury in fact" — an invasion
> of a legally protected interest which is (a) concrete and particularized, and

> (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560-61 (alterations in original, citations omitted). These elements must be examined with respect to each claim advanced by the plaintiff. *See In re Schering Plough Corp*., 678 F.3d 235, 245 (3d Cir. 2012) ("[A] plaintiff who raises multiple causes of action 'must demonstrate standing for each claim he seeks to press.'" (quoting *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

Relatedly, because the U.S. Constitution only permits adjudication of an actual case of controversy, Article III does not permit federal courts to decide moot claims.  *See Rosetti v. Shalala*, 12 F. 3d 1216 (3rd Cir. 1993) (quoting *Liner v. Jafco, Inc.,* 375 U.S. 301 (1964) for the proposition that "the federal courts' lack of authority to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy").  A defense of mootness goes to the underlying jurisdiction of the Court to hear the case. "Whether a case is moot in the Article III sense is, of course, a jurisdictional question." *In re Continental Airlines*, 91 F. 3d 553, 571 (3d Cir. 1996).

In considering a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction, if the defendant's argument depends on facts outside the complaint (a so-called "factual" attack), the Court may freely consider extrinsic evidence.  *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977) ("[T]he trial court is free to weigh the evidence ... and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."); *Gould Electronics Inc. v. US*, 220 F. 3d 169, 176 (3d Cir. 2000)

("In reviewing a factual attack, the court may consider evidence outside the pleadings").

**B.    Plaintiff Had No Legal Interest in the Property, and<br>Cannot Assert Claims Against Defendants**

Here, Plaintiff fails to state a claim against Defendants and lacks standing to pursue claims against Defendants.

Upon PVSC's recording of the Deed and Declaration of Taking in November 2021, it obtained title to the Property "free and discharged of all right, title, interest and liens of all condemnees without the necessity of further process…." *N.J.S.A.* § 20:3-19.   Plaintiff was thereby divested of all legal interest in the Property.  From then onward, Plaintiff could no longer "license" the Property to Defendants or to anyone else.

Under New Jesey law, to create a license for real property, the purported licensor must have a legal interest in the property.  *See Thiokol Chem. Corp. v. Morris County Bd. of Taxation,* 41 N.J. 405, 417 (N.J. 1964) ("a license confers a privilege to occupy *under the owner*") (emphasis added); *Horn v. Harmony Sand & Gravel Inc.,* 442 N.J. Super. 333, 341 (App. Div 2015) (a license is an agreement that "gives permission to use the land *at the owner's discretion*") (emphasis added); 53 C.J.S. Licenses § 153 ("A license can be granted o*nly by one who owns or has an interest in the land* affected by the license") (emphasis added); Restatement (First) of Property § 512 (1944) cmt.to (b) ("A license arises through the consent to use land given by one *whose interest* is or will be affected by the use privileged, or of some one in privity with him.") (emphasis added).[1]

---

[1]   Plaintiff cannot here challenge the Judgment issued in the Eminent Domain Action, which determined that PSVC duly acquired title to the Property in 2021 by commencing the Eminent Domain Action and filing and recording the Declaration of Taking.   Collateral estoppel bares relitigation of a previously decided issue, where: "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Doe v.*

Because PVSC, not Plaintiff, owed the Property in 2022, Plaintiff's claims against Defendants for breach of the License Agreement, breach of the implied covenant of good faith and fair dealing, unjust enrichment, negligence, and a declaratory judgment are not viable, and Plaintiff lacks standing to assert these claims.

**Breach of Contract**:  As explained, Plaintiff could not license real property that it did not have a legal interest in.  As such, the License Agreement was void.  Plaintiff materially and entirely breached the License Agreement, by failing to provide Zariz with a viable "license" to the Property.  *See Ross Systems v. Linden Dari-Delite, Inc*., 35 N.J. 329, 341 (N.J. 1961) ("If the breach is material, i.e., goes to the essence of the contract, the non-breaching party may treat the contract as terminated and refuse to render continued performance.").  Additionally, the License Agreement was void based on Zariz's unilateral mistake in reasonably believing that Plaintiff was the owner of the Property and had the capacity to license it, which was fundamental to the agreement and the reason Zariz entered into it.  *See Cataldo Constr. Co. v. County of Essex,* 110 N.J. Super. 414, 418-19 (App. Div. 1970) (contract may be rescinded for one party's unilateral mistake where, *inter alia,* the mistake relates to the material feature of the contract and enforcing the contract would be unconscionable).  Moreover, the License Agreement was void under the doctrine of frustration of purpose.  *See Edwards v. Leopoldi,* 20 N.J. Super. 43, 53 (App. Div. 1952) (frustration of purpose doctrine voids a contract where the parties' "common object" (the underlying purpose of the contract) has been frustrated).

---

*Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016) (internal citations and quotations omitted).  In the Eminent Domain Action, the Superior Court determined that PVSC acquired title to the property in 2021.  The Judgment issued by Judge Moore is a "final judgment."  *See N.J.S.A.* § 20:3-2(j) ("The adjudication of the right to condemn shall be a final judgment").  Plaintiff and Zariz were parties to the Eminent Domain Action. Plaintiff had a full and fair opportunity to litigate the Eminent Domain Action.  As such, Plaintiff is barred by collateral estoppel from challenging PVSC's title to the Property.

13

***Breach of Implied Covenant of Good Faith and Fair Dealing***.    A claim for breach of the implied covenant of good faith and fair dealing requires the existence of a viable contract.  *See Noye v. Hoffmann-La Roche Inc*., 238 N.J. Super. 430, 434 (App. Div. 1990) ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing.").  The License Agreement was void, so there is no contract upon which to base Plaintiff's claim.

Additionally, because the very same conduct that underlies Plaintiff's claim for breach of the implied covenant is the basis of Plaintiff's breach of contract claim, the claim for breach of the implied covenant must fail.  *See Wade v. Kessler Institute*, 172 N.J. 327, 430 (N.J. 2002) ("A breach of the implied covenant of good faith and fair dealing differs from a literal violation of a contract." (internal citations and quotations omitted)

***Unjust Enrichment:*** "The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Associates Commercial Corp. v. Wallia*, 211 N.J. Super. 231, 243 (App. Div. 1986).  As Plaintiff had no legal interest in the Property after November 2021, Zariz's use of the Property did not, and could not have, come at Plaintiff's "expense."  Indeed, if anyone has a potential claim against Zariz for unjust enrichment, it is PVSC, the owner of the Property from November 2021 onward. PVSC is not a party to this action.

Furthermore, Plaintiff is rife with unclean hands, which bars its claim for equitable relief. A plaintiff will be denied equitable relief when his or her own conduct forms the basis for the claim. *Rolnick v. Rolnick,* 262 N.J. Super. 343, 362 (App. Div. 1993).  The maxim of unclean hands is that the court should not allow itself to become the vehicle of injustice. *Associated East Mortg. Co. v. Young,* 163 N.J. Super. 315, 330 (Ch. Div. 1978). Where a plaintiff engages in bad faith, fraud, or unconscionable acts that serve as the basis for the suit, a court of equity must deny

14

him remedy. *Goodwin Motor Corp. v. Mercedes Benz of N.A., Inc*., 172 N.J. Super. 263, 271 (App. Div. 1980).

Here, Plaintiff "licensed" the Property to Zariz in February 2022 with knowledge that, under the Judgment, it no longer had a legal interest in the Property and lacked the capacity to license the Property.  Yet, Plaintiff ignored these facts, and purported disingenuously to license the Property to Zariz anyway.  This is unconscionable behavior.   Plaintiff cannot be permitted to profit from its own disreputable behavior.

***Negligence:***   In order to sustain a common law cause of action in negligence, a plaintiff must prove four core elements: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages." *Weinberg v. Dinger,* 106 N.J. 469, 484 (1987).  Here, Plaintiff cannot demonstrate that Defendants owed it a duty of care in 2022 or thereafter, as Plaintiff lacked any legal interest in the Property during that period.  There was no privity of contract, licensor-licensee relationship, or other legal relationship between Plaintiff and Defendants giving rise to duty of care from Defendants to Plaintiff.  Accordingly, Plaintiff's negligence claim must fail.

***Declaratory Judgments***:  Plaintiff is plainly not entitled to a declaratory judgment. Because Plaintiff had no legal interest in the Property after November 2021, there are no grounds to award to Plaintiff, and Plaintiff has no standing to obtain, a declaratory judgment regarding Defendants' conduct at the Property.

Furthermore. Plaintiff's declaratory judgment claim is entirely subsumed by its contract and tort claims, which seek monetary relief for the same alleged conduct. *See Rego Indus., Inc. v. American Modern Metals Corp.,* 91 N.J. Super. 447, 453 (App. Div. 1966) (declaratory judgment action should not be filed where there is another available, adequate remedy).

In summary, Plaintiff cannot assert contract and tort claims based upon Defendants'

conduct at the Property during a period in which Plaintiff neither owned, nor held a legal interest in, the Property.  Plaintiff's entire suit is premised upon, and improperly assumes the existence of, a licensor-licensee relationship that simply did not exist.

As such, Plaintiff's claims must be dismissed, both because Plaintiff fails to state a claim under Rule 12(b)(6), and because Plaintiff lacks standing to pursue its claims under Rule 12(b)(1).

Point II

**<u>PLAINTIFF FAILS TO STATE A CLAIM UNDER THE SPILL ACT</u>**

Plaintiff further asserts a claim under *N.J.S.A*. 58:10-23.11, the "Spill Compensation and Control Act", commonly referred to as the "Spill Act."   One provision of the Spill Act, *N.J.S.A.* § 58:10–23.11f(a)(2), provides for a private right of action for contribution for costs arising from the remediation of discharges of certain hazardous substances.  *See id.* ("Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance.").

Here, however, Plaintiff cannot recover from Defendants under the Spill Act.

*First*, to maintain a private action under the Spill Act, the claimant must "first cleanup and remove the discharge in order to recover for discharge of a hazardous substance."  *Dalton v. Shanna Lynn Corp.,* 2012 WL 1345073, at *5 (App. Div. 2012); *see also, Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, L.L.C.*, 655 F. Supp. 2d 473, 504 (D.N.J. 2009) (dismissing claim under Spill Act where the plaintiffs had not yet incurred cleanup and remediation costs).  Here, Plaintiff does not allege that it has cleaned up or removed any contamination caused by Defendants.  On the contrary, Plaintiff seeks an injunction compelling Defendants to remediate

16

the millings.  In the absence of an allegation by Plaintiff that it incurred costs in remediating the millings, Plaintiff cannot assert a claim against Defendants under the Spill Act.

*Second,* a discharge is only actionable under the Spill Act where the party being charged is guilty of "releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters or onto the lands of the State, or into waters outside the jurisdiction of the State when damage may result to the lands, waters or natural resources within the ... State."  *N.J.S.A.* § 58:10-23.11b, "Discharge." Under New Jersey law, Zariz's use of asphalt millings at the Property did not constitute a discharge of "hazardous substances" "onto" or "into" waters or lands.  On the contrary, New Jersey law expressly permitted Zariz to use the asphalt millings at the Property.

In 2017, the New Jersey Department of Transportation ("DOT"), working together with experts from Columbia University, Rowan University, and Stony Brook University, released a report setting forth the results of an extensive two-year study that concluded that recycled millings generally do ***not*** present a safety or toxicity issue, and may generally be safely used as a surfacing material. *See* https://www.nj.gov/transportation/business/research/reports/FHWA-NJ-2017-008.pdf.  The report concluded, among other things, that:

> "RAP [recycled asphalt pavement] may be used as an unbound material in all environments except those which are highly acidic (pH ≤ 4) such as, but not limited to, mines with sulfur-containing minerals or landfills where other materials may decompose creating an acidic environment."

(*Id*. at. 4).

Based on that study, in 2018, New Jersey adopted *N.J.S.A.* § 13:1E-99.28a, which expressly permits the use of unbound millings as a parking lot surface material in most environments.

*N.J.S.A.* § 13:1E-99.28a provides:

    a. ***Notwithstanding the provisions of any law, or any rule or regulation adopted pursuant thereto, to the contrary,*** a person may use recycled asphalt pavement, subject to the limitations in this section as follows:

        (1) unbound in bedrock quarry reclamation;

        (2) unbound underneath a guardrail of a public road or highway;

        (3) unbound or mixed with other materials for use as a base or subbase material in accordance with applicable engineering designs;

        (4) ***unbound as a surface material for a parking lot, farm road, or pathway, or in any other location as authorized by the Department of Environmental Protection***; or

        (5) in any other use authorized by the Department of Environmental Protection.

    b. A person shall not use recycled asphalt pavement as authorized in subsection a. of this section in an environment *in which the pH is less than or equal to four*, unless the person demonstrates to the Department of Environmental Protection that the level of any contaminant in the material is at or below a concentration such that, if leaching occurs, the dissolved concentration of the contaminant in the leachate is:

        (1) at or below applicable drinking water quality standards established by the Department of Environmental Protection and the United States Environmental Protection Agency; and

        (2) at or below all applicable groundwater quality standards established by the Department of Environmental Protection.

    c. If a person fails to demonstrate to the Department of Environmental Protection pursuant to subsection b. of this section that the dissolved concentration of any contaminant in the leachate of recycled asphalt pavement proposed for use in an environment in which the pH is less than or equal to four, is at or below the drinking water quality standards established by the Department of Environmental Protection and the United States Environmental Protection Agency and the applicable groundwater quality standards established by the Department of Environmental Protection, as a condition for the use of the recycled asphalt pavement, the department shall require the installation of a soil layer between the recycled asphalt pavement and the groundwater aquifer at a depth to be determined by the department. (emphasis added).

*N.J.S.A.* § 13:1E-99.28a thus recognizes that asphalt millings do ***not*** present a general safety or toxicity issue, and generally permits the use of asphalt milling as a parking lot surface material, "[n]otwithstanding the provisions of any law, or any rule or regulation adopted pursuant thereto, to the contrary," including the Spill Act.   Zariz's use of asphalt millings as a

at the Parking Area – which is not alleged to be a mine with sulfur materials, landfill, or other highly acidic similar environment – cannot give rise to liability under the Spill Act.

Accordingly, Plaintiff's claim under the Spill Act must be dismissed.

Point III

**PLAINTIFF'S CLAIMS ALSO FAIL FOR ADDITIONAL REASONS**

Separate and apart from the arguments above mandating dismissal of Plaintiff's claims, certain of Plaintiff's claims also fail for additional reasons.

*First*, Plaintiff's claims to (1) "eject" Zariz from the Property (2) for an order directing Zariz to "vacate" the Property, (3) for an order barring Defendants from performing oil changes at the Property, and (4) for an order "temporarily and preliminarily" enjoining Zariz from placing additional millings or bringing hazardous substances to the Property, are entirely moot.  In December 2022, Defendants vacated the Property.  (Guzelgul Decl., ¶15).  That being the case, this Court cannot now "eject" Zariz, nor direct Zariz to "vacate" the Property, nor is there any plausible risk of Defendants performing oil changes or bringing new millings or hazardous substances to the Property. These claims are moot and must be dismissed.

Furthermore, to the extent Plaintiff seeks a mandatory injunction directing Zariz to remove the asphalt millings still at the Property, even assuming, *arguendo*, that Plaintiff has standing to pursue that claim, Plaintiff's remedy lies in New Jersey's Abandoned Property Act, *N.J.S.A.* § 2A:18-72, *et. seq*, which governs the disposition of personal property abandoned by former occupants of real property.   The Abandoned Property Act sets forth the procedure for a landlord's lawful disposition or removal of abandoned property.   The Abandoned Property Act does not grant a property owner the ability to compel the former occupant to remove the abandoned property.

*Second*, even if the License Agreement was not void, the provision of the License Agreement restricting the use of "Hazardous Materials" did not prohibit the use of asphalt milling at the Property.  Section 1(c) of the License Agreement (Guzelgul Decl., Ex. 1) prohibits Zariz from bringing, keeping, using, or storing "Hazardous Materials" at or to the Parking Area.  Under Section 1(f) of the License Agreement (*id*.), "Hazardous Materials" include, *inter alia*, "any hazardous or toxic substances, materials, wastes, pollutants and the like which are defined as such in, and/ or regulated by (or become defined in and/ or regulated by), any applicable local, state or federal law…."  Recycled asphalt millings are neither hazardous nor toxic.  While the Complaint alleges that, "Road millings are a toxic and hazardous substance, highly regulated by the New Jersey Department of Environmental Protection ("NIDEP"), due to the extent in which to contaminates the air and water," (Salhanick Decl., Ex. 14 at ¶24), that is demonstrably untrue.  As set forth above, in 2017, New Jersey determined that recycled asphalt millings do not leach harmful substances into the ground or present a danger, and on the basis, New Jerey law expressly permits their use as a parking lot surfacing material.   Plaintiff's egregious misstatements of New Jersey law and the harm the millings present does not give rise to a viable claim.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion to dismiss should be granted.

Dated: New York, New York
      September 18, 2023

                                     Respectfully submitted,

                                     **A.Y. STRAUSS, LLC**

                                By: <u>/s/ Eric Horn</u>
                                       Eric H. Horn, Esq.
                                       David Salhanick, Esq.

                                     *Attorneys for Defendants*